UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MABEL KAY THOMAS,         :
                             :   NO. 1:04-CV-00147
        Plaintiff,       :
                             :   **OPINION & ORDER**
                             :
   v.                     :
                             :
                             :
SPEEDWAY SUPERAMERICA, LLC.,  :
                             :
        Defendant.      :

This matter is before the Court on the Plaintiff's Memorandum in Support of Motion for Order (1) Designating Count I as a "Collective" Action; (2) Directing Defendant to Provide the Name and Address of Each Potentially Affected Employee; and (3) Directing Notice and Consent to Join Lawsuit (doc. 30), Plaintiff's Motion for Order Certifying Count II as a Class Action (doc. 32), the Defendant's Response to Plaintiff's Motion for Order (1) Designating Count I as a Collective Action; (2) Directing Defendant to Provide the Name and Address of Each Potentially Affected Employee; and (3) Directing Notice and Consent to Join Lawsuit (doc. 39), and the Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Designate a Collective Action as to Count I and Motion to Certify Count II as a Class Action (doc. 52).  The Court conducted a Hearing regarding Plaintiff's Motions (docs. 30 & 32) on August 25, 2005.

**PLAINTIFF'S CLAIMS & FACTS**

Plaintiff, Mabel Thomas (hereinafter "Thomas"), brought this action against the Defendant, Speedway Superamerica, LLC (hereinafter "SSA"), as a collective and class action alleging that SSA violated federal and state wage and hour laws by not paying its salaried employees for all hours worked (doc. 1). First, Thomas claims that SSA violated the Fair Labor Standards Act (hereinafter "FLSA") (Id.). The FLSA requires a plaintiff to institute a "collective action" pursuant to section 216 of the FLSA and individuals are required to "opt in" to the litigation (Id.). Second, Thomas makes a claim under Ohio Revised Code § 4111.03 - under § 4111.03 persons are permitted to institute Rule 23 class actions (Id.). Additionally, Thomas asserts claims against SSA, individually, arising under the Federal Age Discrimination in Employment Act (hereinafter "ADEA"), Ohio Revised Code § 4122.99, and Ohio common law (Id.).

SSA is headquartered in Enon, Ohio (doc. 30). It currently employs approximately 600 employees at its headquarters (Id.). SSA's website indicates that it operates approximately 1700 stores throughout the Midwest and approximately 650 stores in Ohio (Id.). Defendant states that SSA operates approximately 460 stores in Ohio (doc. 39). The size of stores vary; yet, each store requires at least one store manager (doc. 30). Store Managers report to District Managers who in turn, report to Regional

Managers (<u>Id</u>.).

Thomas was an employee of SSA and worked as a Store Manager at Defendant's Middletown, Ohio location, store number 1409 (<u>Id</u>.). Thomas began her employment with SSA on August 14, 1997 (<u>Id</u>.). She was promoted to Store Manager on July 2, 1998 (<u>Id</u>.). The day-to-day duties of a SSA Store Manager are mostly identical (<u>Id</u>.). SSA uses a single job description for Store Managers and has done so for the last several years (<u>Id</u>.). According to SSA's website, typical job duties for a Store Manager include: merchandising, inventory control, and overall customer service (<u>Id</u>.). Thomas avers that a large percentage of a Store Manager's work-day is spent performing non-managerial tasks such as cleaning, stocking, ordering, and filling racks (<u>Id</u>.). Store Managers report to the District Managers on at least a weekly basis and, sometimes, on a daily basis (<u>Id</u>.). SSA has uniform hiring requirements for all Store Managers and engages in standardized job training for all Store Managers (<u>Id</u>.). As a result of this uniformity, it is not uncommon for Store Managers to transfer from one store to another (<u>Id</u>.).

Store Managers at SSA are salaried employees and, according to Thomas, are required to work at least 50 hours per week (<u>Id</u>.). Seventy hour work weeks are not uncommon and, according to Thomas, Store Managers are "on call" 24 hours a day, 7 days a week (<u>Id</u>.). Store Managers receive a base pay of between

-3-

$26,000.00 and $30,000.00 per year and a complete benefits package including medical, dental, and a 401(k) retirement savings plan (Id.).  Store Managers have uniformly been classified by SSA as exempt for purposes of the FLSA and the corresponding Ohio State overtime law (Id.).  Overtime is not paid to Store Managers as a result of this "exempt" classification (Id.).  However, as noted above, Thomas maintains that most of a SSA Store Manager's work-day consists of stocking, cleaning, filling racks, monitoring inventory, trash removal, snow removal, and cashiering (Id.).  Thomas asserts that Store Managers are sometimes required to release hourly wage employees and personally take on their duties in an effort to negate overtime hours paid to non-exempt employees (Id.).  Store Managers are encouraged and often required to work outside of normal business hours, including weekends and evenings (Id.).

**PLAINTIFF'S ARGUMENT FOR CERTIFYING A COLLECTIVE ACTION**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation "on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Thomas cites <u>Shain v. Armour & Co.</u>, 40 F.Supp. 488 (W.D. Ky. 1941) which stated:

> The evident purpose of the Act [FLSA] is to
> provide one law suit in which the claims of
> different employees, different in amount but
> all arising out of the same character of
> employment, can be presented and adjudicated,
> regardless of the fact that they are separate

-4-

and independent of each other.

(doc. 30 <u>citing</u> <u>Shain</u> at 490).

Thomas further notes that the FLSA promotes "broad remedial" measures and courts are afforded the power to give notice to other potential class members to "opt in" to a plaintiff's case (<u>Id</u>. <u>citing</u> <u>Dybach v. Florida Dept. Of Corr.</u>, 942 F.2d 1562, 1567 (11th Cir. 1991)); <u>see also</u> <u>Hoffman-LaRoche v. Sperling</u>, 493 U.S. 165, 170 (1989) ("[a] collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources"). <u>Hoffman-LaRoche</u> states that a collective action serves the goal as well of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." <u>Hoffman-LaRoche</u> at 170. Furthermore a collective action promotes effective communication between the parties, resolves the parties' disputes regarding the content of any notice, thwarts an abundance of individual lawsuits, provides proper and efficient joinder of additional parties, and ultimately expedites a resolution. <u>Id</u>. at 170-172; <u>Garner v. G.D. Searle Pharm.</u>, 802 F.Supp. 419, 422 (M.D. Ala. 1991); <u>see also</u> <u>Yates v. Wal-Mart Stores, Inc.</u>, 58 F.Supp. 2d 1217, 1218 (D. Colo. 1999) ("judicial efficiency demands" consolidation of individual overtime claims in a collective action).

When permitting a plaintiff to proceed with a collective action, the proof required is less rigid than that

-5-

necessary to establish joinder or a class action pursuant to Rules 20(a) and 23, respectively, of the Federal Rules of Civil Procedure. <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1096 (11th Cir. 1996), <u>cert</u>. <u>denied</u>, 519 U.S. 982 (1996); <u>see also</u> <u>Church v. Consolidated Freigtways Inc.</u>, 137 F.R.D. 294 (N.D. Cal. 1991) (holding that some of Rule 23's requirements may be useful in determining a collective action pursuant to the FLSA, but the requirements are in no way required). As noted above, an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." <u>Grayson</u> at 1096.

A district court, in determining whether to issue an "opt-in" notice in overtime cases, can find other employees exist who are similarly situated where those claimed to be so situated share similar job requirements and pay provisions. <u>Dybach</u> at 1567-68. The individuals need not be identically situated, just similarly situated. <u>See</u> <u>e.g.</u>, <u>Shain</u> at 490; <u>Dybach</u> at 1567-68. A Plaintiff bears the burden of demonstrating that she is similarly situated to the potential opt-ins. <u>Grayson</u> at 1097. Furthermore, this burden, "which is not heavy," may be met by "making substantial allegations . . ., that is, detailed allegations, supported by affidavits which 'successfully engage defendants' affidavits to the contrary." <u>Id</u>. (<u>internal</u> <u>citations</u> <u>omitted</u>). Once a determination has been made by the court that the potential plaintiffs are similarly situated, the court can authorize

-6-

collective notice.  See e.g., Hoffman v. Sbarro, 982 F.Supp. 249, 261-62 (S.D.N.Y. 1997).

The process involved in determining whether an "opt-in" notice should be authorized by the Court is neatly summarized by Hunter v. Sprint Corp., 346 F.Supp. 2d 113 (D.D.C. 2004). Thomas has essentially argued for this Court to follow the process described by Hunter.  The Court finds the language in Hunter to be clear and accurate and, therefore, quotes extensively from said decision:

> The FLSA authorizes a plaintiff to challenge the denial of overtime on behalf of herself and any "other employees similar situated." 29 U.S.C. § 216(b).  This unique cause of action, known as a "collective action," is not subject to the numerosity, commonality, and typicality rules of a class action under Rule 23.  See Vengurlekar v. Silverline Techs., Ltd., 220 F.R.D. 222, 229 (S.D.N.Y. 2003); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F.Supp. 2d 493, 496 (D.N.J. 2000).  Instead, a collective action has only two threshold requirements: the plaintiff must show that she is similarly situated to the other members of the proposed class, and those other members must "opt in" to the proposed class.  See McNeil v. Dist. of Columbia, 1999 WL 571005, at *1 (D.D.C. Aug. 5, 1999) (Facciola, M.J.); Vengurlekar, 220 F.R.D. at 229; Morisky, 111 F.Supp. 2d at 496.
>
> To determine whether a class should be certified under the FLSA, a court will usually proceed in two steps.  At the first stage of the analysis, plaintiffs must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Flores v. Lifeway Foods, Inc., 289 F.Supp. 2d 1042, 1045 (N.D. Ill.

2003) (quotation omitted); see Cameron-Grant
v. Maxim Healthcare Servs., 347 F.3d 1240,
1243 n.2 (11th Cir. 2003); Mooney v. Aramco
Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir.
1995) (overruled on other grounds). If the
plaintiff is able to make that showing, the
class is "conditionally certified" and the
members of the class are given notice of the
collective action and an opportunity to "opt
in" to the litigation. Cameron-Grant, 347
F.3d at 1243 n.2; Flores, 289 F.Supp. 2d at
1045; Scott v. Aetna Servs., Inc., 210 F.R.D.
261, 264 (D.Conn. 2002). The action then
proceeds as a representative action through
the discovery period. Mooney, 54 F.3d at
1213-14; Scott, 210 F.R.D. at 264.

The second step of the analysis occurs at the
close of discovery, when the defendant may
move to decertify the class in light of the
record that was developed during the discovery
period. See Cameron-Grant, 347 F.3d at 1243
n. 2; Flores, 289 F.Supp. 2d at 1045; Scott,
210 F.R.D. at 264. The court then makes a
factual finding as to whether the proposed
class members are similarly situated. See
Cameron-Grant, 347 F.3d at 1243 n. 2; Mooney,
54 F.3d at 1214; Scott, 210 F.R.D. at 264. If
the court determines that the putative class
is similarly situated, then the action
proceeds to trial. If the court determines
that the putative class is not similarly
situated, then the class is de-certified, the
opt-in plaintiffs are dismissed without
prejudice, and the named plaintiffs proceed to
trial in an individual capacity. See Mooney,
54 F.3d at 1214; Scott, 210 F.R.D. at 264.

Hunter v. Sprint Corp., 346 F.Supp. 2d 113, 117 (D.D.C. 2004).

Thomas is at the first stage, as were the plaintiffs

in Hunter. As noted in Hunter, "[plaintiffs] are asking the Court

to designate a group of similarly situated employees for

conditional certification, to facilitate the certification process

-8-

by ordering defendants to produce the names and addresses of employees in the proposed class, and to approve the form of the notice to be distributed to the class." <u>Hunter</u> at 117.  Thomas seeks the exact same thing in her current motion.

Thomas maintains that collective action authorization is well-warranted in this matter (doc. 30).  She argues that she has demonstrated a "reasonable basis" for the class allegations (<u>Id</u>. citing <u>Grayson</u>, 79 F.3d at 1097).  Thomas notes that she has set forth the uniform job requirements and pay provisions in her allegations which are supported by 4 Store Manager affidavits and deposition testimony of SSA management (<u>Id</u>.).  This evidence, contends Thomas, proves that the Store Managers are subject to uniform job requirements and standards, paid under a salary-based compensation system, required to work at least 50 hours per week and, thus regularly work in excess of 40 hours per week without overtime compensation (doc. 30).  This evidence, argues Thomas, is more than sufficient to meet the "lenient" standard require to authorize collective action notice. Thomas cites <u>De Asencio v. Tyson Foods, Inc</u>., 130 F.Supp 2d 660 (E.D. Pa.) in which the court found the allegations contained in the complaint and the declarations of the four named plaintiffs were sufficient for an opt-in notice to be sent to line workers in a poultry processing plant seeking back pay.  <u>Id</u>.

SSA argues against this Court's authorizing an opt-

-9-

in notification stressing that (1) Thomas has failed to demonstrate that there are other Store Managers interested in opting-in to the action; (2) Thomas has failed to demonstrate that she and all 1000 potential class members are similarly situated; and (3) Thomas has altogether failed to address the executive exemption under the FLSA (doc. 39). The Court will address each of these arguments in turn.

SSA states that "[p]rior to conditionally certifying a collective action and authorizing notice, the Court must 'satisfy itself that there are other employees who desire to opt-in and who are similarly situated with respect to their job requirements and with regard to their pay provisions'" (doc. 39 <u>quoting</u> <u>White v. Osmose Inc.</u>, 204 F.Supp. 2d 1309, 1312 (M.D. Ala. 2002) (<u>internal citations omitted</u>)). Thomas has secured, in addition to the four affidavits attached to her motion, written statements from 24 Store Managers who appear similarly situated to Thomas (doc. 52). Furthermore, these 24 former Store Managers have retained Thomas' law firm, Freking and Betz, with the intent to pursue claims against SSA for unpaid overtime wages (doc. 52). The Court does not find SSA's argument well-taken - namely, that Thomas has identified no other employees who desire to opt-in. Clearly Thomas has identified at least 24 Store Managers who, were this Court not to authorize the issuance of an opt-in notice, presumably would proceed individually against SSA for violations of the FLSA.

SSA's argument that Thomas has failed to carry her

burden of demonstrating that she and the group she seeks to represent are "similarly situated" is also not well-taken.  SSA is correct in noting that a plaintiff bears the burden of establishing that the group sought to be represented is "similarly situated" to the Plaintiff.  See e.g., Holt v. Rite Aid Corp., 333 F.Supp. 2d 1265, 1270 (M.D. Ala. 2004).  The Court has already extensively quoted from Hunter in which the court stated:

> [P]laintiffs must make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law . . . If the plaintiff is able to make that showing, the class is conditionally certified and the members of the class are given notice of the collective action and an opportunity to "opt in" to the litigation.

Hunter at 117 (internal citations omitted).  Plaintiff insists that this standard - establishing that SSA through a common policy or plan violated the law - is not the applicable standard (doc. 52).  However, as noted by Thomas, even if this standard were applicable (which the Court finds it is), the showing required is not stringent nor does "similarly situated" equal "identically situated."  See e.g., Shain at 490; Dybach at 1567-68.

        A plaintiff can demonstrate this through substantial allegations made in the complaint supported by affidavits.  Thomas has met this burden.  She has demonstrated that: (1) SSA uniformly classifies Store Managers as exempt from federal and state overtime pay requirements; (2) Store Managers routinely work in excess of 50

hours per week and are generally required to do so; (3) the majority of a Store Manager's day-to-day work routine consists of non-executive duties; and (4) Store Managers are not compensated for those hours worked above 40 in a given week (doc. 52).  As previously discussed, 24 Store Managers have signed statements that they were subject to the same policies and procedures (<u>Id</u>.).  Accordingly, the Court finds that indeed Thomas has met her burden of identifying employees who desire to opt-in and who were similarly situated to Thomas.

Next, SSA argues that Thomas has not offered into evidence any policy or stated procedure which facially prevents her and 1000 Store Managers from meeting the executive exemption (doc. 39).  SSA avers that Thomas cannot point to any policy or stated procedure which inherently strips Store Managers of their managerial and supervisory authority, which, maintains SSA, is the primary duty of a Store Manager (<u>Id</u>.).  The executive exemption upon which SSA so heavily relies can be found at 29 C.F.R. § 541.1. The executive exemption applies to employees:

> (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized of subdivision thereof; and
>
> (b) Who customarily and regularly directs the work of two or more other employees therein; and
>
> (c) Who has the authority to hire or fire other employees or whose suggestions and

recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: Provided, that this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Somoa), exclusive of board, lodging or other facilities: Provided, that an employee who is compensated on a salary basis at a rate of not less than the Federal Government in Puerto Rico, the Virgin Islands or American Somoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section.

29 C.F.R. § 541.1.

Thomas argues that SSA attempts to "fit" its Store Managers into the executive exemption by simply "self-classifying"

-13-

Store Managers as <u>bona</u> <u>fide</u> executives (doc. 52).  Thomas asserts
that whether potential members of the proposed collective action
were improperly classified as <u>bona</u> <u>fide</u> executives is the paramount
issue to be determined in this matter (<u>Id</u>.).  Accordingly, argues
Thomas, this matter is not ripe for determination at this state of
the proceedings (<u>Id</u>.).  Thomas contends that the two cases upon
which SSA relies, <u>Jones v. Virginia Oil Co.</u>, 2003 WL 21699882 (4th
Cir. July 23, 2003) and <u>Donovan v. Burger King Corp.</u>, 672 F.2d 221
(1st Cir. 1982), are inapplicable because those decisions were on
appeal from final judgment (doc. 52).  Thomas cites extensively
from <u>Smith v. Lowe's Co. Inc.</u>, 2005 U.S. Dist. LEXIS 9673 (S.D.
Ohio May 11, 2005):

> Most courts hold that the determination of
> whether FLSA claimants are "similarly
> situated" for purposes of § 216(b) is a two-
> step process.  <u>De Asencio v. Tyson Foods,
> Inc.</u>, 130 F.Supp. 2d 660, 663 (E.D. Pa. 2001),
> <u>Briggs v. United States</u>, 54 Fed. Cl. 205, 206
> (2002).  The first step, which is generally
> conducted early in the litigation process, is
> a preliminary inquiry into whether the
> plaintiff's proposed class is constituted of
> similarly-situated employees.  <u>De Asencio</u>, 130
> F.Supp. 2d at 663; <u>Briggs</u>, 54 Fed. Cl. at 206.
> The second step, which is usually conducted
> after completion of class related discovery,
> is a specific factual analysis of each
> employee's claim to ensure that each actual
> claimant is appropriately made party to the
> suit.  <u>De Asencio</u>, 130 F.Supp. 2d at 663;
> <u>Briggs</u>, 54 Fed. Cl. at 206.

<u>Smith</u> at *8.  Thus, argues Thomas, the matter before this Court is
a determination of whether Thomas' FLSA action may be designated a

-14-

collective action and notice of the action issued to potential collective members (doc. 52).  Thomas avers that she need not rebut SSA's asserted "executive exemption" argument, because that issue should be addressed only after the Court has addressed her current Motion to Certify a Collective Action (Id.).

The Court notes that SSA's arguments contained in its Opposition to Thomas' current Motion mirror closely those arguments posited in its pending Motion for Summary Judgment (doc. 49).  The Sixth Circuit has made it clear that a district court is not required to decide a motion for class certification prior to deciding a motion for summary judgment or other motions which would ultimately dismiss the matter.  See e.g., Thompson v. County of Medina, 29 F.3d 238, 241 (6th Cir. 1994).  The inverse logically would also be true - specifically, a district court need not decide a motion for summary judgment or other dispositive motion prior to determining whether to certify the matter as a class action.  The Seventh Circuit has noted:

> In most circumstances, a judge should determine whether to grant or deny certification prior to ruling on the merits, as indicated by the text of Rule 23: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Fed.R.Civ.P. 23(c). This is the preferred policy as "the propriety of class certification does not depend on the outcome of the suit . . . It is therefore difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits." Bieneman v.

-15-

> City of Chi., 838 F.2d 962, 964 (7th Cir.1988)
> (citations omitted). We have since noted,
> however, that such situations do exist. If "as
> soon as practicable" occurs after a case is
> already "ripe for summary judgment" then it
> might be proper for a judge to consider a
> motion for summary judgment prior to
> considering a motion for class certification.
> Cowen, 70 F.3d at 941 (citations omitted).
> Where this situation occurs, if the court
> determines that the named plaintiffs' claims
> lack merit, such a decision "ordinarily,
> though not invariably, . . . disqualifies the
> named plaintiffs as proper class
> representatives," thus resolving the issue of
> class certification. Cowen, 70 F.3d at 941
> (citations omitted).

Chavez v. Illinois State Police, 251 F.3d 612, 630 (7th Cir. 2001).

The Court finds that Chavez's reasoning for holding
that a court should generally grant class certification prior to
ruling on a motion for summary judgments is well-reasoned and most
conducive to efficient and fair proceedings.  Additionally, the
Court finds that this reasoning is equally applicable where a court
is faced with either issuing an opt-in notice under the FLSA or
deciding a summary judgment motion - specifically, the
determination regarding the opt-in notice should be rendered, in
most instances, prior to a decision regarding summary judgment.  In
Richards v. Computer Sciences Corp., 2004 WL 2211691 (D.Conn. Sept.
28, 2004), the court noted that "[t]he standard for proceeding with
discovery and notice as a collective action under the Fair Labor
Standard Act is lower than the bar imposed on non-movants
attempting to show a genuine issue of material fact at the summary

-16-

judgment stage." <u>Richards</u> at *2.

Accordingly, the Court is persuaded by Thomas'
argument that now is not the appropriate time to address SSA's
"executive exemption" argument. However, the Court will
preliminarily address this argument. It should first be noted that
any employer claiming that the executive exemption applies to
certain employees will have said exemption "'narrowly construed
against'" it. <u>See</u> <u>e.g.</u>, <u>Schaefer v. Indiana-Michigan Power Co.</u>,
358 F.3d 394, 399-40 (6th Cir. 2004) <u>quoting</u> <u>Douglas v. Argo-Tech
Corp.</u>, 113 F.3d 67, 70 (6th Cir. 1997) (<u>internal</u> <u>citations</u> <u>omitted</u>).
Additionally, the employer bears the burden not only of proof, but
also the burden on every element of the claimed exemption. <u>Id</u>.
(<u>internal</u> <u>citations</u> <u>omitted</u>). In other words, a plaintiff is
"entitled to summary judgment unless the defendant can come forward
with evidence at least creating a genuine issue of material fact as
to whether [Plaintiff] meets each and every element of the
exemption." <u>Beauchamp v. Flex-N-Gate LLC</u>, 357 F.Supp. 2d 1010,
1013 (E.D. Mich. 2005) <u>quoting</u> <u>Martin v. Indiana-Michigan Power
Co.</u>, 381 F.3d 574, 578 (6th Cir. 2004).

Under the Department of Labor regulations in place
during this dispute, so long as an employee earns more than $250.00
per week, "the employer must show that the employee meets the
'short test' definition of <u>bona</u> <u>fide</u> administrator or executive in
order to prove that he is exempt. . ." <u>Ale v. T.V.A.</u>, 269 F.3d 680,

-17-

683 (6th Cir. 2001) <u>citing</u> 29 C.F.R. §§ 541.2(e)(2) & 541.1(f).  It
is not disputed that Thomas or any similarly situated Store Manager
makes less than $250.00 per week.  As such the Short Test is
applicable.  The Short Test defines a <u>bona</u> <u>fide</u> executive as "any
employee 'whose primary duty consists of the management of the
enterprise in which the employee is employed or of a customarily
recognized department or subdivision thereof, and includes the
customary and regular direction of the work of two or more other
employees therein . . ."  <u>Ale</u> at 683-684 <u>quoting</u> 29 C.F.R. §
541.1(f).

          The regulations provide guidance as to what
constitutes "managing."  These include: interviewing; selecting and
training of employees; setting and adjusting their rates of pay and
hours of work; directing their work; maintaining their production
or sales records for use in supervision or control; appraising
their productivity and efficiency for the purpose of recommending
promotions or other changes in their status; handling their
complaints and grievances and disciplining them when necessary;
planning the work; determining the techniques to be used;
apportioning the work among the workers; determining the type of
materials, supplies, machinery or tools to be used or merchandise
to be bought, stocked and sold; controlling the flow and
distribution of materials or merchandise and supplies; providing
for the safety of the men and the property.  <u>See</u> <u>Ale</u> at 684-85

<u>quoting</u> 29 C.F.R. § 541.102(b).

The regulations also provide guidance on how to determine whether "managing" constitutes a particular employee's primary duty. Of paramount importance in this determination is the amount of time spent in the performance of managerial duties. <u>Ale</u> at 684.

> In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time . . . Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

<u>Id</u>. <u>quoting</u> 29 C.F.R. § 541.103. Determining whether an employee is exempt as a <u>bona</u> <u>fide</u> executive for purposes of the FLSA, a court must focus on the actual activities of the employee. <u>Ale</u> at 688-89. The regulations state that a "determination of whether an employee has management as his primary duty must be based on all the facts in a particular case." 29 C.F.R. § 541.103 Furthermore, a "determination of whether an employee is exempt is an inquiry that is based on the particular facts of his employment and not general descriptions. <u>Ale</u> at 689 <u>citing</u> <u>Brock v. Nat'l</u> <u>Health Corp.</u>, 667 F.Supp. 557, 565-66 (M.D. Tenn. 1987) (to

-19-

ascertain exemption status it is necessary to examine closely duties and actual work performed).

SSA argues that the executive exemption is applicable because "managing" was the "primary duty" of Thomas and any other similarly situated Store Manager (doc. 39). However, simply because a supervisor is "in charge of their shifts" does not necessarily dictate that the individual is an "executive" for purpose of the FLSA exemption. See e.g., Beuchamp at 1018. As noted above, a court should analyze the actual activities of an employee and take into account all of the facts in a given employment situation. In instances where the employee trained other employees, scheduled other employees, assigned work to other employees, oversaw product quality, determined the quantity of items to be purchased, and performed various record-keeping duties, courts have found the executive exemption to apply. See e.g., Donavan v. Burger King Corp., 672 F.2d 221 (1st Cir. 1992). However, in instances where shift supervisors did not have management as their primary duty in that they did not set or adjust the hours of others, determine which employees manned which posts, or train other employees, courts have found these employees to be non-exempt. See e.g., Ale at 692. The shift supervisors in Ale were considered non-exempt primarily because supervision of others was not their primary duty. Id.

Thomas maintained at the hearing and in her

-20-

affidavit that although Store Managers did supervise other employees and perform other managerial duties that supervision and managerial discretion was dependent upon the routine approval of a district manager.  Furthermore, as the regulations explicitly state and as <u>Ale</u> reiterates an important factor in determining whether an employee should be classified as exempt is the percentage of work spent performing duties not described in sub-sections (a) through (d) of 29 C.F.R. § 541.1.  Thomas has alleged that she spent a significant portion of her time performing non-managerial, non-exempt work - work not described in sub-sections (a) through (d) (doc. 30).

The Court is not in a position, yet, to rule on a summary judgment motion nor is it required to do so.  However, it should be clear to SSA that it has the burden of proving that Thomas and those other similarly situated Store Managers are exempt employees.  Failure to do so would result in a denial of SSA's pending Motions for Summary Judgment.  Accordingly, Thomas' Motion for Order (1) Designating Count I as a Collective Action; (2) Directing SSA to Provide the Name and Address of Each Potentially Affected Employee; and (3) Directing Notice and Consent to Join Lawsuit is well-taken (doc. 30).  The Court now turns to Thomas' Motion for Order Certifying Count II as a Class Action.

**Requirements of Federal Rule of Civil Procedure 23(a)**

Thomas moves this Court to certify Count II as a

-21-

class action and define the class as all present and former employees that SSA deems "Store Managers" who worked at SSA anytime from February 19, 2001 to the present (doc. 32).  In order to proceed as a class action, the party seeking certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  As no class action may be maintained without meeting these prerequisites, an analysis of these factors is appropriate.  Additionally, one prerequisite of Rule 23(b) must also be met.

### Rule 23(a)(1): Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1).  The plaintiff need not demonstrate that it would be impossible to join all the class members; rather, he need simply show that joinder in this case would be difficult and inconvenient.  Day v. NLO, Inc., 144 F.R.D. 330, 333 (S.D. Ohio 1991); see also Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 63 (S.D. Ohio 1991) (stating "[s]atisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship

-22-

or inconvenience if joinder is required."). There is no strict numerical test used to determine whether joinder is impracticable. <u>Senter</u>, 532 F.2d at 523. Instead, the court must examine the specific facts of each case. <u>General Tel. Co. of Northwest, Inc. v. EEOC</u>, 446 U.S. 318, 330 (1980). In determining numerosity, the court "may consider reasonable inferences drawn from facts before him at the stage of the proceedings." <u>Senter</u>, 532 F.2d at 523. This court, in <u>Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 105 F.R.D. 506 (S.D. Ohio 1985) found that as few as twenty-three class members could satisfy the requisite numerosity. <u>Id</u>. at 508 ("Paraphrasing another district court's view of the first requirement of the rule, while 23 may not be a large number when compared to other classes that have been certified, it is a large number when compared to a single unit; there is no reason to encumber the judicial system with 23 consolidated lawsuits when one will do.") <u>citing</u> <u>Philadelphia Electric Co. v. Anaconda American Brass Co.</u>, 43 F.R.D. 452 (E.D.Pa. 1968). Thomas avers that there are approximately 1,500 current and former employees of SSA who were wrongfully classified as "exempt" (doc. 32). Thomas argues that joinder of 1,500 potential plaintiffs is impracticable (<u>Id</u>.). The Court agrees and finds that Thomas has met the requirement of numerosity.

### Rule 23(a)(2): Commonality

In order to satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is satisfied "as long as the

members of the class have allegedly been affected by a *general* policy of the defendant and the general policy is the focus of the litigation." <u>Day</u>, 144 F.R.D. at 333 (quoting <u>Sweet v. General Tire & Rubber Co.</u>, 74 F.R.D. 333, 335 (N.D. Ohio 1976)) (<u>emphasis in original</u>). The commonality test is qualitative, not quantitative. 1 Herbert B. Newberg and Alba Conte, <u>Newberg on Class Actions</u>, § 3.10 at 3-50 (3d ed. 1992). There need be only a single question of law or fact common to all members of the class. <u>Id.</u> "[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." <u>Sterling v. Velsicol Chemical Corp.</u>, 855 F.2d 1188, 1197 (6th Cir. 1988).

In the present case, Thomas argues that common issues of law and fact are indeed present so as to meet the commonality requirement (doc. 32). These common questions of fact and law, maintains Thomas, include SSA's conduct and representations, such as:

1. Did SSA improperly classify Store Managers as "exempt" employees?

2. Were these actions willful?

(<u>Id</u>.). Thomas cites <u>Wenthold v. AT&T Tech.</u>, 491 N.E.2d 1263 (Ill. App. Ct. 1986) in which the plaintiffs sought class certification in an action to recover past overtime payments due under Illinois' minimum wage law. <u>Id</u>. at 1264. The court certified the class and

AT&T appealed the certification, arguing that its administrative employee exemption defense required such individual determinations that class treatment was improper.  <u>Id</u>. at 1266.  The appellate court upheld the district court's certification order, noting that "the instant case involves a variety of issues the resolution of which will be common to all class members and only one issue, exemption, potentially requires individual determinations." <u>Id</u>. at 1269.

Thomas also cites <u>Haft v. United States Steel Corp.</u>, 451 A.2d 445 (Pa. Super. Ct. 1982) in which the prospective class was a group of retired foreman and management personnel below the level of general supervisor.  <u>Id</u>. at 446.  The prospective class sought pay for work done on certain Sundays, holidays, and overtime work.  <u>Id</u>.  The class was certified.  <u>Id</u>. at 447.  Thomas cites a number of other similar cases in which certification was deemed appropriate.  <u>See</u> <u>e.g.</u>, <u>Webster v. Bechtel, Inc.</u>, 621 P.2d 890, 893 (Alaska 1980); <u>Blackie v. Barrack</u>, 524 F.2d 891 (9th Cir. 1975), <u>cert. den.</u>, 429 U.S. 816 (1976); <u>Kramer v. Scientific Control Group</u>, 67 F.R.D. 98 (E.D. Pa. 1975), <u>appeal dismissed</u>, 534 F.2d 1085 (3rd. Cir.), <u>cert. den.</u>, 429 U.S. 830 (1976); and <u>Korn v. Franchard Corp.</u>, 456 F.2d 1206 (2d Cir. 1972).  Here, Thomas has alleged the common policy of SSA in which it routinely classifies Store Managers as exempt when allegedly they are not.  Furthermore, each potential class member would be asserting a claim for unpaid wages in violation of both federal and Ohio law.  This is sufficient to establish the commonality requirement of Rule

-25-

23(a)(2).

### Rule 23(a)(3): Typicality

Rule 23(a)(3) also requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A representative's claim need not always involve the same facts or law to be typical, provided there is a common element of fact or law. Senter, 532 F.2d at 525 n.31. The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members. 1 Newberg, supra, § 3.13, at 3-75. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." Id. at 3-76.

Again, Thomas has met this requirement. Thomas alleges claims involving specific actions taken by SSA which affect the entire class - namely, the incorrect classification of Store Managers as exempt. Thomas' claims "rise from the same event or course of conduct that gives rise to the claims of other class members and the claims are based on the same legal theor[ies]." See Newberg supra at 3-76; see also Fischer v. Plessy Co., 103 F.R.D. 150, 154 (S.D.N.Y. 1984); Senter v. General Motors Corp., 532 F.2d 511 (6th Cir. 1976), cert. den., 429 U.S. 870 (1976). Thomas maintains that "[SSA] cannot argue that [Thomas'] Complaint

-26-

does not raise common issues of liability.  Consequently, [Thomas] stands in an identical position to other members of the class and satisfies Rule 23(a)(3)" (doc. 32).  The Court agrees.

### Rule 23(a)(4): Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).  There are two criteria for determining the adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  <u>Senter</u>, 532 F.2d at 525; <u>Cross v. Nat'l Trust Life Ins. Co.</u>, 553 F.2d 1026, 1031 (6th Cir. 1977) (stating Rule 23(a)(4) tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent").  This adequacy requirement overlaps with the typicality requirement.

Thomas maintains that her interests are aligned with the interests of all class members (doc. 32).  Thomas avers that pursuit of her interests will advance the interests of the other class members - that being the pursuit of unpaid overtime wages (<u>Id</u>.).  Thomas notes that if she were to attain relief the class would not be adversely impacted, rather if she were to establish the right to unpaid wages it would only bolster the claims of the other class members (<u>Id</u>.).  As for the other prong of the adequacy

-27-

test, this Court and indeed the entire Southern District of Ohio is eminently familiar with Thomas' counsel and is confident that said counsel is competent to represent the class. Accordingly, Thomas has met the adequacy requirement.

### Rule 23(b)(2) & (3)

Thomas contends that this class action may be certified under Rule 23(b)(2) as well as 23(b)(3). Rule 23(b)(2) permits the certification of a class when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, avers Thomas, injunctive relief is appropriate and necessary to provide the class with the benefit which they were denied as a result of their inappropriate classification as exempt employees (doc. 32).

Thomas notes that she is seeking relief other than injunctive relief (Id.). However, multiple forms of relief do not bar the certification of a Rule 23(b)(2) class. See Jones v. Diamond, 519 F.2d 1090, 1100 (5th Cir. 1975) (noting that "[s]o long as the predominant purpose of the suit is for injunctive relief, the fact that a claim for damages is also included does not vitiate the applicability of 23(b)(2)"). In Probe v. State Teachers' Retirement Sys., 780 F.2d 776 (9th Cir. 1986), cert. den., 476 U.S. 1170 (1986) stated, "[c]lass actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or

-28-

declaratory relief, but may include cases that also seek monetary damages." Id. at 780. Courts "have upheld the applicability of Rule 23(b)(2) when both the injunctive and damages relief sought for the class were of approximately equal importance." 1 Newberg, supra, at § 4.14. Since Thomas seeks injunctive relief on behalf of the class as a whole and the claim for monetary relief is incidental to the conduct of SSA, certification pursuant to Rule 23(b)(2) is proper.

Thomas also argues that certification is appropriate under Rule 23(b)(3) (doc. 32). Under Rule 23(b)(3), class certification is proper when the Court finds that common questions of law and fact predominate over questions affecting individual members, and that a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). It has already been discussed in this Order that questions of law or fact common to Thomas predominate over any questions affecting individual class members.

The Court also finds that a class action is the superior method for handling this matter in a fair and efficient manner. Thomas cites Hohmann v. Packard Instrument Co., 399 F.2d 711 (7th Cir. 1968), which stated:

> To permit the defendants to contest liability with each claimant in a single separate suit would, in many cases, give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent.

Id. at 715. Thomas maintains that denying her motion would

likewise discourage individual class members from initiating litigation alleging wage and overtime violations because of the difficulties inherent in terms of time, expense, and experience in complex litigation issues. Additionally, Thomas notes that this Court has held that a plaintiff's preference in litigating a matter as a class action should be given deference. See Basile v. Merrill Lynch, Pierce, Fenner & Smith, 105 F.R.D. 506 (S.D. Ohio 1985). Accordingly, the Court finds that this action can proceed as a class action pursuant to either Rule 23(b)(2) or 23(b)(3).

**CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Plaintiff's Motion to Certify Count I as a Collective Action (doc. 30). In so granting, the Court also ORDERS Defendant to furnish to Plaintiff the name and address of each potentially affected employee forthwith. Additionally, the Parties are ORDERED to submit to the Court for its approval no later than September 23, 2005 a Joint Proposed Notice and Consent to Join ("Opt-In") form similar to those attached to Plaintiff's Motion (doc. 30). The Court also hereby GRANTS Plaintiff's Motion for Class Certification (doc. 32), conditionally CERTIFIES this case as a class action pursuant to Fed. R. Civ. P. Rules 23(a) and (b)(2) or (b)(3), and DEFINES the class to include:

> Any and all present and former employees classified by the Defendant as "Store Managers" who worked at Speedway SuperAmerica at any time from February 19, 2001 to the present who worked hours in excess of forty per week and were not compensated appropriately.

Such definition is subject to modification. Plaintiff will carry

the burden of proving exposure to Defendant's improper conduct. The Court further DESIGNATES Plaintiff Mabel Kay Thomas to serve as class representative, and DESIGNATES Randolph H. Freking to serve as class counsel.


        SO ORDERED.



Dated: September 13, 2005      /s/ S. Arthur Spiegel

                               S. Arthur Spiegel
                               United States Senior District Judge