UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MABEL KAY THOMAS,                    :
                                     :        No. 1:04-CV-00147
          Plaintiff,                 :
                                     :        **OPINION AND ORDER**
     v.                              :
                                     :
SPEEDWAY SUPERAMERICA, LLC.,         :
                                     :
          Defendant.                 :

     This matter is before the Court on Defendant's Motions for Summary Judgment – one on Plaintiff's Fair Labor Standards Act and Ohio Overtime Provisions claims (doc. 49) and one on Plaintiff's age discrimination claims (doc. 51) – Plaintiff's Memoranda in Opposition to these Motions for Summary Judgment (docs. 60, 61) and Defendant's Memoranda in support of its two Motions for Summary Judgment (docs. 67, 68). For the following reasons the Court grants both of defendant's summary judgment motions.

**FACTS AND PROCEDURAL HISTORY**

     Plaintiff, Mabel Thomas (hereinafter "Thomas"), brought this action against Speedway SuperAmerica LLC. (hereinafter "SSA") as: (1) a collective action under the Fair Labor Standards Act (hereinafter "FLSA") as amended; (2) a class action under Ohio Revised Code § 4111.03; and 3) an age discrimination claim brought under the Federal Age Discrimination in Employment Act (hereinafter "ADEA"), Ohio Revised Code § 4122.99 and Ohio common law (doc. 1).

The FLSA requires a plaintiff to institute a "collective action" pursuant to section 216 of the statute, and individuals must "opt in" to the litigation (Id.). On September 13, 2005, the Court designated Count 1 as a collective action (doc. 59). Class actions are proper under Ohio Revised Code § 4122.99 if they meet the requirements of Fed. R. Civ. P. 23 (Id.). Also on September 13, 2005, this Court certified a class for Count 2 of the Plaintiff's complaint defining the class to include:

> Any and all present and former employees classified by the Defendant as "Store Managers" who worked at Speedway SuperAmerica at any time from February 19, 2001 to the present who worked hours in excess of forty per week and were not compensated appropriately.

(Id.).

SSA is headquartered in Enon, Ohio (doc. 30). It currently employs approximately 600 employees at its headquarters (Id.). SSA's website indicates that it operates approximately 1700 stores throughout the Midwest and approximately 650 stores in Ohio (Id.). Defendant states that SSA operates approximately 460 stores in Ohio (doc. 39). The size of stores vary; yet, each store requires at least one Store Manager (doc. 59). Store Managers report to District Managers who in turn, report to Regional Managers (Id.).

Thomas was an employee of SSA and worked as a Store Manager at Defendant's Middletown, Ohio location, Store Number 1409

2

(Id.). Thomas began her employment with SSA on August 14, 1997 (Id.). She was promoted to Store Manager on July 2, 1998 (Id.). The day-to-day duties of a SSA Store Manager are mostly identical (Id.). SSA uses a single job description for Store Managers and has done so for the last several years (Id.). According to SSA's website, typical job duties for a Store Manager include: merchandising, inventory control, and overall customer service (Id.). Thomas avers that a large percentage of a Store Manager's work-day is spent performing non-managerial tasks such as cleaning, stocking, ordering, and filling racks (Id.). Store Managers report to the District Managers on at least a weekly basis and, sometimes, on a daily basis (Id.). SSA has uniform hiring requirements for all Store Managers and engages in standardized job training for all Store Managers (Id.). As a result of this uniformity, it is not uncommon for Store Managers to transfer from one store to another (Id.).

Store Managers have uniformly been classified by SSA as exempt for purposes of the FLSA and the corresponding Ohio State overtime law (Id.). Overtime is not paid to Store Managers as a result of this "exempt" classification (Id.). Store Managers at SSA are salaried employees and, according to Thomas, are required to work at least fifty hours per week (Id.). Seventy hour work weeks are not uncommon and, according to Thomas, Store Managers are

3

"on call" twenty-four hours a day, seven days a week (Id.). Thomas asserts that Store Managers are sometimes required to release hourly wage employees and personally take on their duties in an effort to negate overtime hours paid to non-exempt employees (Id.). Store Managers are encouraged and often required to work outside of normal business hours, including weekends and evenings (Id.).

Store Managers receive a base pay of between $26,000.00 and $30,000.00 per year and a complete benefits package including medical, dental, and a 401(k) retirement savings plan (Id.). At the time of her termination Thomas was compensated at a base salary of $555 per week and was eligible to receive monthly bonus payments under SSA's Store Manager Bonus Program (doc. 49). Thomas was the only individual employed at Store 1409 who was classified as a manager and eligible to receive bonuses under the program (Id.). Under the Bonus Program, Thomas was eligible to receive an additional $3,000 per month in additional income.

As noted above, Thomas maintains that most of a SSA Store Manager's work-day consists of stocking, cleaning, filling racks, monitoring inventory, trash removal, snow removal, and cashiering (doc. 59). Thomas also greeted and waited on customers (doc. 49). All in all, Thomas estimated that she spent approximately sixty percent of her time performing non-management duties (Id.).

Thomas had an evaluation rating of "very satisfactory"

4

before Mr. Beatty, the District Manager who recommended her termination, took over on January 17, 2003 (doc. 61.). Thomas received her first disciplinary action on April 16, 2003, from Mr. Beatty (see Id.). This disciplinary action was for failure to change security video tapes, failure to keep work schedules properly, and improperly working a third shift without notifying Mr. Beatty of a change in schedule (Id.). On July 22, 2003, an independent audit of the store revealed numerous violations of company policy, including: (a) missing cigarette inventories; (b) incomplete Stage II dispenser inspections; (c) $800 in missing phone cards; (d) missing or taped over videotape; (e) improperly allowing third shift employees to use the Store Manager's register codes before money and cigarette counts were verified and allowing such employees to access levels outside their authority; (f) employees not having individualized security codes so that matters such as missing phone cards could be properly investigated; (g) vendors not signing into the daily log; and (h) missing lottery reports (doc. 51). On Mr. Beatty's recommendation, Thomas was terminated from her position on August 3, 2003 (doc. 61.) SSA contends that Thomas was terminated because of her repeated failure to comply with company policies.

Thomas was forty-eight years old at the time she was fired and claims that her age was the real reason for her termination (doc.

5

61).  She alleges that Mr. Beatty treated her differently than younger, similarly situated employees (Id.).  She points out that other managers who were terminated had more gross deviations from policy than she (Id.).  Thomas argues that many of the violations, specifically the missing phone cards and the failure to rotate video tapes are attributable to one of her subordinates and not directly to her (Id.).  Finally, Thomas argues that Defendant has offered "shifting and inconsistent" reasons for Thomas's termination, implying that the real motivator was her age (Id.).

**APPLICABLE LEGAL STANDARD**

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.  Id. at 321; Guarino v.

6

<u>Brookfield Township Trustees</u>, 980 F.2d 399, 405 (6th Cir. 1992); <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see <u>Guarino</u>, 980 F.2d at 405.

As the Supreme Court stated in <u>Celotex</u>, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324; <u>Guarino</u>, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" <u>Guarino</u>, 980 F.2d at 405 (quoting <u>Inter-Royal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. <u>McDonald v. Union Camp Corp.</u>, 898 F.2d 1155, 1162 (6th Cir. 1990).

**ANALYSIS**

**A.   Plaintiff's Age Discrimination Claim Under ADEA and Ohio Revised Code § 4122.99**

7

The framework for evaluating an age discrimination claim is identical under state and federal law. Brune v. BASF Corp., 41 F. Supp. 2d 768 (S.D. Ohio 1999). A plaintiff may establish a claim of discrimination by either direct or circumstantial evidence. Kline v. Tenn. Valley Auth., 128 F.3d 337 (6th Cir. 1997). As direct evidence of an employer's discrimination is rarely available, courts rely on the well-established McDonnell Douglas-Burdine analysis. See e.g., Kline v. Tennessee Valley Authority, 128 F.3d 337, 348 (6th Cir. 1997). McDonnell Douglas - Burdine permits a plaintiff to prove their case of discrimination through circumstantial evidence. Id. When no direct evidence of discrimination is available and a plaintiff avails himself of the McDonnell Douglas - Burdine burden-shifting approach, the plaintiff must, through "inferential and circumstantial" evidence, prove [his] prima facie case . . . [so as to] support an inference of discrimination. Kline at 348.

To establish a prima facie case via "inferential and circumstantial" evidence proving an "inference of discrimination," a plaintiff must meet certain requirements. These requirements are: (1) proof he is a member of a protected class; (2) proof he was subject to an adverse employment action; (3) proof he was qualified for the position; and (4) proof he was replaced by a person outside the protected class. Grosjean v. First Energy

8

Corp., 349 F.3d 332 (6th Cir. 2003) citing Kline at 349.

The Court finds that Thomas has established a prima facie case via "inferential and circumstantial" evidence. Thomas was forty-eight years old at the time she was fired, her termination constituted an adverse employment action, and she was replaced by a thirty-six year old employee. Furthermore, the evidence in the record shows that she was qualified for her position until the violations which led to her firing. Before Mr. Beatty became Thomas's supervisor she was evaluated as "very satisfactory" and assessments by Mr. Beatty before the incidents which led to her termination indicated that he felt her performance was "satisfactory." Since, "a court may not consider the employer's alleged non-discriminatory reason for taking an adverse employment action," the court must find that Thomas was qualified for her position. Wexler v. White's Fine Furniture, Inc., 317 F.3d 564 (6th Cir. 2003).

Once a plaintiff has established a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Kline at 342. If a defendant can meet this burden, the plaintiff must then prove that the articulated legitimate, non-discriminatory reasons proffered by defendant were pretextual. Kline at 342.

"Pretext is established by a direct showing that a discriminatory reason more like motivated the employer or by an indirect showing that the employer's explanation is not credible." Id. citing Texas Dep't of County Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Pretext can be established by showing (1) that the defendant's proffered reasons had no basis in fact (i.e., they actually did not occur; (2) that the proffered reasons did not actually motivate the plaintiff's discharge; or (3) that the proffered reasons were insufficient to motivate plaintiff's discharge. Kline at 346 citing Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994). The Sixth Circuit in Manzer cited the Seventh Circuit case, McNabola v. Chicago Transit Auth., 10 F.3d 501 (7th Cir. 1993), in establishing these three modes of proving pretext. Manzer at 1084. Manzer discusses the route one must take in establishing each mode. Id.

In the present case, SSA has met its initial burden by articulating a legitimate non-discriminatory reason for terminating Ms. Thomas. SSA contends that Thomas was terminated for numerous policy violations, "as determined *not* by the alleged discriminators but by independent SSA auditors" (doc. 51.). Some of the violations that were found by the independent auditors were the same or similar to violations that Thomas had been disciplined for previously (Id.). Violations of company policy are certainly

10

legitimate and age neutral reasons for terminating an employee.  An employer is allowed to exercise discretion in making personnel decisions as long as they are exercised in a non-discriminatory manner.  Slather v. Sather Trucking Corp., 78 F.3d 415 (8th Cir. 1996).  As the defense has articulated this non-discriminatory justification for the adverse employment action the burden then shifts to the Plaintiff to prove pretext as articulated in Manzer, 29 F.3d 1078.

Thomas argues that the "shifting" nature of SSA's proffered reasons for terminating Thomas are evidence of pretext (doc. 61).  During Thomas's deposition she stated that at the time she was fired she was told it was "for breaking company policy (i.e. "going to the bank to buy change") (Id.).  During Mr. Beatty's deposition, he asserted that Thomas was terminated because of the audit report and Lori Hall's allegations (Id.).  In a memorandum to an SSA attorney, Mr. Kidd, a regional manager, and Mr. Bottle articulated the reason for Thomas's termination in different terms.  Mr. Kidd identified Mr. Beatty's and Mr. Bottle's investigation and "previous disciplinary action" (Id.).  Mr. Bottle identified specific policy violations (Id.).  Presently, SSA has identified a number of different policy violations revealed in the audit including violations that were the subject of a disciplinary order written by Beatty to Thomas (Id.).

11

Despite these different articulations of the justification for Thomas's termination, the Court agrees with Defendant SSA, that its underlying and non-discriminatory reason for termination has remained consistent throughout the process. Thomas was told she was being terminated for policy violations and knew of the specific policy violations that had been documented in her April 16, 2003, disciplinary action as well as those revealed in the independent audit (doc. 68). The subsequent statements by SSA management all reference these policy violations even though some refer to the policy violations directly and others refer to the audit or investigation that revealed those policy violations. Additionally, SSA internal records revealed the reason for Plaintiff's termination was violation of company policy and explained that violations had been documented both during the audit and previously in the disciplinary action by Mr. Beatty (doc. 68). All of these factors show that Thomas was indeed terminated for a single consistent reason – namely, that she violated company policy in instances detailed by the disciplinary action and the audit.

Thomas further argues that the legitimate reasons proffered by SSA to justify her termination are untrue (doc. 61). She asserts that she had nothing to do with the $800 in missing phone cards because a subordinate employee was stealing them (Id.). She further alleges that she did in fact conduct cigarette

12

inventories and Stage II dispenser inspections during her shifts, and that it was a manner of store practice not to assign individual codes to employees for selling phone cards (Id.).  Finally, Thomas argues that because there is no company policy specifying how low an audit score must be to justify employee termination, that the audit itself could not have been a real motivation for her termination (Id.).

Thomas's arguments do not convince the Court that SSA's non-discriminatory justification for terminating her were untrue. The fact remains that there were policy violations, specifically the failure to rotate video tapes, the failure to require employees to sign in and out on their work schedules properly, instructing an Assistant Manager to inaccurately record Thomas's time on the schedule, and modifying her schedule without notifying a supervisor, all which, in toto, could reasonably justify her termination (doc. 61).

Furthermore, the Court does not find that Thomas's arguments adequately dissociate Ms. Thomas from the $800 in missing phone cards or the failure to assign individual employees codes to sell phone cards.  The employee that was found to be stealing phone cards was a subordinate of Thomas.  Even though she was not stealing the cards herself, she had a responsibility to ensure that none of the employees under her supervision were either.

13

Similarly, as a manager Thomas has a role in establishing and carrying out policies in her own store and, as Defendant points out, "*she* was responsible for her store's shortcomings". If, for example, the store policy of assigning codes to registers rather than employees was a violation of company policy, Thomas is at least partly responsible. Finally, the absence of company policy establishing a bright-line "termination audit score" does not mean that SSA is unjustified in firing an employee for violations that are revealed in an audit.

Finally, Thomas argues that the reasons asserted for her termination are insufficient to justify the termination (doc. 61). She provides evidence of three other employees who were terminated for losing significant company revenue. Her termination, avers Plaintiff, was based solely on minor policy violations (Id.) Consequently, Plaintiff concludes that her termination was unjustified.

The fact that some employees were fired for more serious policy violations than Thomas, does not establish that SSA was unjustified in terminating PLaintiff. All of these individuals were in a similar situation to Plaintiff. They were terminated after policy violations discovered during audits of their stores. SSA took the same action against these employees as it took against Ms. Thomas, termination. The situations of these employees, does

14

nothing to establish evidence in the record that the policy violations stated by SSA as its legitimate non-discriminatory reason for Plaintiff's termination was insufficient to support her termination.

As noted Plaintiff has satisfied her initial burden under the <u>McDonnell-Douglas - Burdine</u> burden shifting approach, stating a <u>prima</u> <u>facie</u> case for age discrimination. SSA, however, has met its initial burden to supply a legitimate and non-discriminatory reason for the termination - namely, by evidence that violations of company policy were attributable to Plaintiff. Plaintiff has failed to show that this stated reason for her termination was merely pretext. She has not established either (1) that the allegations of policy violations attributable to her were untrue, or (2) the policy motivations were not the true motivation for her termination, or (3) that these policy violations were insufficient to support her termination. The Court does not find the arguments offered by Plaintiff persuasive. There is clear evidence in the record indicating repeated SSA policy violations, which are attributable to her as Store Manager. Because of Thomas's failure to demonstrate genuine issues of material fact regarding her claim for discrimination, the Court finds that her claim is not well taken. In so finding, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's age discrimination claim pursuant

15

to both federal and state law (doc. 51).

**B.  Plaintiff's Claim of Ohio Public Policy Violation**

The Court grants Defendant's Motion for Summary Judgment on Plaintiff's Ohio Public Policy Violation as well.  Pursuant to the this Court's earlier Decision in an unrelated case, <u>Feichtner v. Roman Catholic Archdiocese of Cincinnati</u>, 2006 WL 571962 (S.D. Ohio Mar. 07, 2006), the Court finds, as it did in <u>Feichtner</u>, that it is bound by the Sixth Circuit's holding in <u>Carrasco v. NOAMTC, Inc.</u>, 124 Fed. Appx. 297, 2004 WL 2756838 (6th Cir. 2004), and agrees with other courts in this district that the broad scope of remedies available under Ohio R.C. § 4112.99 is sufficient to vindicate Ohio's public policy goals, and thus forecloses a separate cause of action for violation of public policy. Accordingly, Defendant's Motion for Summary Judgment on this issue is granted (doc. 51).

**C.  Plaintiff's Claim as to Violations of the Fair Labor Standards Act and Ohio Overtime Provisions**

Defendant, SSA, does not deny that Thomas has established a <u>prima</u> <u>facie</u> case for violations of the FLSA by establishing: 1) Plaintiff had an employer-employee relationship; 2) Plaintiff engaged in activities covered by FLSA; and 3) Defendant did not pay Plaintiff 150% of her normal hourly rate for hours she worked in excess of 40 hours per week.  <u>See</u> <u>Gregg v. SBC/Ameritech</u>, 2005 U.S. Dist. LEXIS 12577, *54(S.D. Ohio 2005) <u>quoting</u> <u>Kowalski v. Kowalski</u>

16

<u>Heat Treating Co.</u>, 920 F. Supp. 199, 806 (N.D. Ohio 1996). Rather, Defendant asserts as an affirmative defense that Thomas was properly classified as an "exempt" employee and served in the capacity of a "<u>bona</u> <u>fide</u> executive" for SSA pursuant to 29 U.S.C. § 213(a)(1)(doc. 49). As Defendant points out, Ohio Revised Code § 4111.03 provides for payment of overtime in the "manner and methods provided in and subject to the exceptions of section 7 and 13" of the FLSA. Therefore, the determination of Plaintiff's FLSA claims controls the outcome of Plaintiff's state law claims.

Any employer claiming the executive exemption will have said exemption, "narrowly construed against it." <u>See</u> <u>e.g.</u>, <u>Schaefer v. Indiana-Michigan Power Co.</u>, 358 F.3d 394, 399-40 (6th Cir. 2004) <u>quoting</u> <u>Douglas v. Argo-Tech Corp.</u>, 113 F.3d 67, 70 (6th Cir. 1997)(<u>internal</u> <u>citations</u> <u>omitted</u>). Additionally, the employer bears the burden not only of proof, but also the burden on every element of the claimed exemption. <u>Id</u>. (<u>internal</u> <u>citations</u> <u>omitted</u>). In other words, a plaintiff is "entitled to summary judgment unless the defendant can come forward with evidence at least creating a genuine issue of material fact as to whether [Plaintiff] meets each and every element of the exemption." <u>Beauchamp v. Flex-N-Gate LLC</u>, 357 F. Supp. 2d 1010, 1013 (E.D. Mich. 2005) <u>quoting</u> <u>Martin v. Indiana-Michigan Power Co.</u>, 381 F.3d 574, 578 (6th Cir. 2004).

17

Under the Department of Labor regulations in place during this dispute, so long as an employee earns more than $250 per week, the employer can demonstrate the employee is exempt by meeting the "short test" of 29 C.F.R. § 541.[1]  See Ale v. Tennessee Valley Authority, 269 F.3d 680 (6th Cir. 2001). This short test is met if the employer demonstrates: 1) the employee's primary duty consists of the management of the enterprise or of a customarily recognized department or subdivision thereof; and 2) the employee customarily and regularly directs the work of two or more employees.  See 29 C.F.R. § 541.119(a)(2003).  There is no dispute as to the second element of the test.  Plaintiff regularly supervised two or more employees, generally having at least five employees working for her (doc. 49).  As such the issue remaining is whether the Plaintiff's "primary duty" was management.

The regulations provide guidance for evaluating the meaning of "management".

---

[1] The regulations in effect when Plaintiff was employed and terminated by SSA, included both a long and a short test for determining whether an employee was exempt.  The regulations were amended in August 2004.  Currently an employee is exempt under 29 C.F.R. § 541 if: 1) they are compensated more than $455 per week, 2) their primary duty is management of "the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof", 3) they customarily and regularly direct the work of two or more other employees, and 4) who have the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

18

> It is generally clear that work such as the following is exempt work when it is performed by an employee in management of his department or the supervision of employees under him: Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

See <u>Ale</u> <u>quoting</u> 29 C.F.R. § 541.102(b)(2001).

The regulations also provide a method for evaluating whether management is an employee's primary responsibility.

> The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of the employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time . . . Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

(Id.) <u>quoting</u> 29 C.F.R. § 541.103 (2001).

19

The regulations state that a "determination of whether an employee has management as his primary duty must be based on all the facts in a particular case." 29 C.F.R. § 541.103 (2003). Furthermore, a "determination of whether an employee is exempt is an inquiry that is based on the particular facts of his employment and not general descriptions." Ale at 689 citing Brock v. Nat'l Health Corp., 667 F. Supp. 557 (M.D. Tenn. 1987) (to ascertain exemption status it is necessary to examine closely duties and actual work performed).

SSA argues that based upon Thomas's actual duties and the work she performed at SSA Store 1409 she is an exempt employee under 29 U.S.C. § 213(a)(1), despite the fact that she may spend more time conducting non-managerial tasks than managerial ones. In support of its argument, SSA cites to a number of authorities that conclude managers of a convenience store or other stand alone retail operations are generally considered "in charge" of that operation and thus are exempt employees regardless of the amount of time spent doing non-managerial tasks. The logic behind each case is that the Store Manager's primary responsibility is the management of the store. Although management might sometimes involve the performance of non-exempt tasks, these tasks are done in line with the manager's responsibility to be "in charge" of a store and ensure that it functions properly.

20

In a case involving managers in charge of convenience stores/gas stations, similar to those at issue in the present case, the Eighth Circuit Court of Appeals held that persons in the top management position at individual Stuckey's stores had the primary duty of management even though they spent up to 90% of their time performing non-exempt tasks. <u>Murray v. Stuckey's Inc.</u>, 939 F.2d 61 (8th Cir. 1991). In <u>Murray</u>, the plaintiff contended that they were not really in management positions because most of their time was spent on non-managerial work and that "all decisions of real importance were made by Stuckey's regional managers to whom the store managers regularly reported." <u>Id</u>. The <u>Murray</u> court rejected this argument concluding that management was the primary purpose of the store manager because they performed the tasks described in the regulations on a day-to-day basis. <u>Id</u>.

Similar logic was used by both the First Circuit Court of Appeals and Second Circuit Court of Appeals in their determinations that Assistant Managers at Burger King had the primary duty of management regardless of whether they spent the majority of their time performing non-exempt work. <u>See Donovan v. Burger King Corp.</u>, 675 F.2d 221 (1st Cir. 1982); <u>Donovan v. Burger King Corp.</u>, 675 F.2d 516 (2d Cir. 1982). The First Circuit concluded that "the person "in charge" of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work and

21

makes few significant decisions." <u>Donovan v. Burger King Corp</u>., 675 F.2d 221 (1st Cir. 1982). The Second Circuit Court of Appeals determined that based upon the other pertinent factors listed in the regulations, including the fact that the Assistant Managers were solely in charge of their restaurants during the bulk of their working hours, the time performing non-exempt tasks should not be determinative. <u>Donovan v. Burger King Corp.</u>, 675 F.2d 516 (2d Cir. 1982).

As Thomas correctly points out, the Sixth Circuit Court of Appeals has stated "[t]he words 'in charge' are not a magical incantation that render an employee a bona fide executive regardless of his actual duties." <u>Ale</u> 269 F.3d 680. In that case the Court refused to find a shift supervisor working for the Tennessee Valley Authority exempt, merely because the Magistrate Judge had used the phrase "in charge of their shifts" to describe the shift supervisor's duties. <u>Id</u>. The court found that in fact the supervisor had little control over the people he was supervising and was unable to perform functions such as selecting employees, apportioning work, recommending promotions, disciplining employees, etc. <u>Id</u>.

In the present case it appears that Plaintiff's control over the other employees in her store was much more analogous to the Store Managers in the First, Second and Eighth Circuit Court

decisions than the shift supervisor in Ale.  Thomas had the authority to recommend termination of employees, if not terminate them herself (doc. 67).  Thomas conducted performance evaluations and reviews of the employees at her store, and had the authority to discipline employees (Id.).  Additionally, Thomas had control over scheduling, ordering products, inventory, safety and training (Id.).  These are the types of duties that are described as guidelines to be used when determining the meaning of the word management.  See 29 C.F.R. § 541.103 (2001).

The specific duties for which Thomas was responsible as manager of an independent retail establishment are at least enough to preclude a mechanistic application of the fifty percent rule of thumb.  The evidence on record supports Defendant's assertion that Thomas may have performed managerial tasks in conjunction with her non-managerial tasks, or that the overall nature of her job was geared towards performing inherently management functions.  To conclusively determine whether management was Plaintiff's primary duty, however, the Court must still examine the other relevant factors listed in 29 C.F.R. § 541.103: 1)the relative importance of the managerial duties as compared with other types of duties, 2) the frequency with which Thomas exercised discretionary powers, 3) Plaintiff's relative freedom from supervision, and 4) the relationship between Plaintiff's salary and the wages paid other

23

employees for the kind of non-exempt work performed by the supervisor.

   *a.   The Relative Importance of Management Duties as Compared with Other Types of Duties*

In assessing the relative importance of a store manager's managerial and non-managerial duties in a combination gas station/convenience store, the Fourth Circuit Court of Appeals framed this inquiry as "a measure of the significance of the managerial tasks to the success of the facility." Jones v. Virginia Oil Co., 2003 WL 21699882 (4th Cir.) (quoting Haines v. S. Retailers Inc., 939 F. Supp. 441 (E.D. Va. 1996).

It is clear that in this case Plaintiff's work as manager was critical to the success of the facility. Although she answered to higher levels of management, it was Thomas who was principally in charge of the store on a day-to-day basis, ensuring that employees were adequately scheduled, inventory was appropriately stocked, and even that the store met its profit and loss goals (doc. 49). Although Thomas correctly points out that the store could not operate without the non-managerial employees (doc. 60), it was her role as management to ensure that all of the necessary daily tasks were accomplished. Even though Thomas may have frequently had to perform non-managerial tasks, it was her role as management that was of principle importance to the success of the store.

24

The conclusion that Plaintiff's management role was relatively more important to the success of her store than her non-management duties is supported by the extra benefits and training SSA gave to its managers.  Thomas received specialized training in order to be able to perform her management functions and was eligible for specialized benefits if she performed her management duties well (doc. 69).  This extra investment for management functions shows that the corporation considered her duties as manager of principle importance to the store.

*b.     The   Frequency   With   Which   Thomas   Exercised Discretionary Power*

The term discretion implies "that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." <u>Dymond v. U.S. Postal Service</u>, 670 F.2d 93 (8th Cir. 1992) (<u>quoting</u>) 29 C.F.R. § 541.207(a)(1982). A general test is whether the employee "customarily and regularly exercises discretion and independent judgement." (Id.) (<u>quoting</u>) 29 C.F.R. § 541.2(b) (1982). Furthermore, "The fact that an employee's decisions may be subject to review and that upon occasion the decisions are revised and reversed after review does not mean that the employee is not acting with discretion and independent judgment." <u>Vezina v. Jewish Community Center of Metropolitan Detroit</u>, 1994 WL 762214 (E.D. Mich.) <u>quoting</u> 29 C.F.R. § 541.208(e) (1994).

Plaintiff's role in the store required that she regularly and customarily exercised discretion and independent judgment. Thomas was given the necessary discretion to ensure that activities critical to the operation of a successful store occurred each day. Although she did not have the authority to decide what inventory went on shelves, or to alter the number of employees working at the store (doc. 60), she did have discretion to order inventory as needed, schedule employees to cover all of the store's shifts,

26

evaluate employee performance, and discipline employees as needed (doc. 49). During the time that Lamar Wallace was her district manager, he visited Plaintiff's store only once or twice a week; during the time Tony Beatty was her district manager he visited only once a week or every other week. The type of decisions which Thomas made, and the infrequency of visits by her superiors indicates that she often used her own judgment to make decisions important to the day-to-day operations of the store. Although she was forced to operate within company guidelines, this does not negate the fact that she frequently exercised discretionary power.

   *c. Plaintiff's Relative Freedom from Supervision*

   Even if a Store Manager has to report to an active regional manager responsible for a number of stores, it will not necessarily mean that they are working without relative freedom from supervision. Courts have frequently held that a manager who is principally in charge of an independent retail location is operating with relative freedom despite the fact that a superior may come into the store from time to time. See Donovan v. Burger King Corp., 675 F.2d 516 (2d Cir. 1982); see also Murray v. Stuckey's Inc., 939 F.2d 614 (8th Cir. 1991); Jones v. Virginia Oil Co., 2003 WL 21699882 (4th Cir.) Because Thomas was the senior most person on site and was ultimately the person in charge of Store 1409 on most days she was operating relatively free from

supervision even though a district manager routinely visited the store.

> d. The Relationship Between Plaintiff's Salary and the Wages Paid Other Employees for the Kind of Non-exempt Work Performed by Plaintiff

This factor likewise weighs in favor of Defendant. Plaintiff earned $555.00 per week and was eligible to receive up to $3,000.00 per month in bonuses at the time of her termination (doc. 49). None of the employees over which Plaintiff had supervisory authority were eligible for this bonus (Id.). Furthermore, these subordinate employees earned hourly rates in the range of $7.25 to $8.65 (Id.). Thus, Defendant concludes, and the Court agrees, that Plaintiff was clearly compensated at a substantially higher rate than her subordinates.

Accordingly, the Court finds that Plaintiff was an "exempt" employee as contemplated by the FLSA. Furthermore, as the determination of Plaintiff's FLSA control Plaintiff's state law overtime claims, the Court finds Plaintiff "exempt" under Ohio law as well. As such, Defendant's Motion for Summary Judgment on Plaintiff's FLSA and Ohio Overtime Provisions is granted.

**CONCLUSION**

For the foregoing reasons the Court hereby GRANTS Defendant's Motions for Summary Judgment (docs. 49, 51).  This matter is hereby DISMISSED FROM THE COURT'S DOCKET.

SO ORDERED.


Dated: March 30, 2006          s/S. Arthur Spiegel

                               S. Arthur Spiegel
                               United States Senior District Judge

29